FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

01 JAN 25 AM 10: 13

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| SANDRA PHILLIPS, | ) |
| Plaintiff, | ) |
| vs. | ) CV-99-PT-1967-M |
| AMERICAN NURSERY PRODUCTS, LLC, d/b/a/ MIDWESTERN NURSERIES OF ALABAMA, | ) |
| Defendant. | ) |

ENTERED
JAN 25 2001

## MEMORANDUM OPINION

This cause comes to be heard upon defendant American Nursery Products's ("defendant") Motion for Summary Judgment, filed on December 11, 2000. Plaintiff Sandra Phillips ("plaintiff") brought this action for gender and pregnancy discrimination pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and the Pregnancy Discrimination Act contained therein.

### FACTS

The defendant owns and operates three plant nursery facilities: one in Alabama, one in Michigan, and one in Oklahoma. Prior to the events giving rise to this litigation, the plaintiff was the Personnel Manager of the defendant's Alabama nursery, a position that she had held from October of 1987 to July of 1998. From all accounts, she performed her job well.

In September 1997, the plaintiff informed the General Manager of the Alabama store, Rick Luchtefeld, that she was pregnant and would need to take a leave of absence in the future, suggesting that the leave extend from Memorial Day to Labor Day. Luchtefeld agreed to give

32

her the requested leave. The plaintiff's pregnancy was more difficult than expected, however, and a premature labor caused her to be hospitalized from April 9, 1998 to April 22, 1998. The plaintiff's absence, therefore, started much earlier than expected, and, by late May, she had depleted her paid leave.

At the plaintiff's request, Luchtefeld allowed her to "take a lay-off:" to terminate her employment with the defendant in order for her to be able to draw unemployment benefits from the State of Alabama, with the understanding that, after the unemployment benefits were depleted, she would be able to resume her employment with the defendant.[1] The plaintiff chose not to request the leave rightfully hers under the Family and Medical Leave Act ("FMLA") and subsequent regulations, found at 29 C.F.R. §§ 825.100 *et seq.*, which guarantees a certain amount of unpaid leave during which time an employee may not be terminated for his or her absence. Phillips, depo. 178. The plaintiff admits that she was aware of the FMLA. Id. at 163. She denies that her decision was "necessarily" motivated by the fact that the statutorily-provided leave was unpaid, while being "laid off" would allow her to draw unemployment benefits from the State of Alabama. Id. at 178. She questionably asserts instead that she forewent the statutorily guaranteed leave of absence because "I didn't feel like I had to have in writing that [I] [had] a job to come back to." Id. The defendant placed the plaintiff on official lay-off status on June 1, 1998.[2] At that time, the plaintiff understood that she would be re-employed on July 13,

---

[1] It is undisputed that the defendant frequently allows employees, including pregnant women, to take such "lay-offs," and usually re-hires them.

[2] The plaintiff has offered, as plaintiff's exhibit 10, the form submitted, at her request and on her behalf, to the State of Alabama Unemployment Compensation Agency. The document claims that the plaintiff has been temporarily laid off from April 9, 1998 to July 13, 1998 because of "lack of work." The document does not disclose that the lay-off and the unemployment compensation claim are actually a facade on the part of both the plaintiff and the defendant to allow the plaintiff to obtain paid medical leave. The court does not address the legality of this facade, criminal or otherwise– it was clearly unethical.

2

1998. Later, the defendant extended that time to August 1, 1998. About one week before she was supposed to return to work, Luchtefeld informed the plaintiff that, because of corporate restructuring, the position of "personnel manager" had been eliminated, and she would not be re-hired. Luchtefeld himself made the decision not to re-hire the plaintiff.

## DISPUTED FACTS

The plaintiff first appears to dispute the assertion that the company was attempting to downsize and eliminate certain job descriptions at all. She seems to allege that hers was the only position eliminated, or at least the only position of "personnel manager" eliminated. The defendant asserts that, in reality, its corporate structure was experiencing a downsizing involving the elimination of certain managerial positions in the personnel, accounting, sales, and credit departments. The consolidations and eliminations, mainly of supervisory and managerial positions, occurred in the other stores, as well as at the highest levels of the corporate structure. Hazzard, depo. 41-44, 73-74. The plaintiff's position, personnel manger, was eliminated, and its job functions were divided between another female employee at the Alabama store, Jody Lamey, and the Human Resources Manager for the entire corporation, Annie Hazzard. Id. at 40. In the Alabama store alone, at least two other employees, Jerry Morton, the Alabama store controller, and David Crowe, an Alabama store sales manager, lost their positions because of the consolidations, and did not receive new positions with the company or the opportunity to assume the lower position into which their job functions had been consolidated.[3,4] The personnel

---

[3] Luchtefeld testified that he does not believe in demoting employees because it simply does not "work out." Luchtefeld, depo. 160-161.

[4] The plaintiff claims that Jerry Morton was offered another position in the computer department. The plaintiff has presented no evidence of the offer other than her own allegations. Fields, Luchtefeld, and Hazzard all deny that an alternate position was offered to the store controller. See note 7, infra.

3

departments in the other two stores already had been either downsized to one person or eliminated entirely. Hazzard, depo. 72-75.

Another issue concerns a former employee of the defendant's that the plaintiff attempts to use as a comparator for purposes of her prima facie case. The defendant undisputedly removed employee Steve Garmon from his position at one of the Alabama farms and offered him an alternate position at another farm. The plaintiff claims that Garmon was a manager and that his position was eliminated, like her own, but that he was allowed to stay with the company. She points to Garmon as a similarly situated non-pregnant/male employee who was treated differently than she. The defendant claims that Garmon's position was not eliminated, but that he was demoted from his management position to that of a supervisor because he did not perform his job properly. Luchtefeld, depo. 122. An employee named Steve Williams replaced Garmon as manager of the farm after Garmon was demoted. Id.

The plaintiff also claims that the decision to not re-hire her was a direct result of either her gender or pregnancy. She alleges that Lutchefeld suggested to her that, had she not left the office to be with the baby, she would not have been the first manager to be fired. The defendant, while arguing that the decision to not re-hire the plaintiff was made solely on the basis of down-sizing and costs, has not disputed that Lutchefeld made such a statement. The plaintiff also claims that Wayne Fields, the defendant's president and CEO, made sexually derogatory statements about women,[5] and that Lutchefeld had made pejorative statements about the plaintiff and other pregnant women.[6] Again, the defendants have not, to this court's knowledge, disputed

---

[5] It is difficult to understand the relevance of this assertion, since it is undisputed that Lutchefeld, not Fields, made the decision to not re-hire the plaintiff.

[6] Lutchefeld is alleged to have stated that the plaintiff "should have considered her job before getting pregnant." Garmon, affidavit.

4

these allegations.

## STANDARD FOR SUMMARY JUDGMENT

A motion for summary judgment is to be granted if there is no genuine issue of material fact. United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id. The evidence of the non-moving party is to be believed, and the court is not to attempt to perform jury functions such as credibility determinations. Id. After considering everything in the record, all permissible inferences are to be drawn in favor of the non-moving party. Clinkscales v. Chevron USA, Inc., 831 F.2d 1565, 1570 (11th Cir. 1987).

When the non-moving party has the burden of proof at trial, it must come forward with sufficient evidence on each element that must be proved. Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). If the evidence is merely colorable or is not significantly probative, summary judgment may be proper. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986). Summary judgment is appropriate if on any element there would be insufficient evidence to require submission of the case to a jury. Earley, 907 F.2d at 1080. "The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such circumstances, there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 327 106 S. Ct. 2548, 2555 (1986).

## STANDARD FOR TITLE VII GENDER/PREGNANCY DISCRIMINATION

In 1978, Congress grafted the Pregnancy Discrimination Act (PDA) onto the already existing structure of Title VII by defining its prohibition against discrimination "because of sex" to include discrimination because of pregnancy, childbirth, or related medical conditions. 42 U.S.C. § 2000e(k)(1994); Spivey v. Beverly Enterprises, Inc., 196 F.3d 1309, 1312 (11th Cir. 1999). As a result, the standard is the same for both Title VII gender discrimination claims and Title VII pregnancy discrimination claims. Armindo v. Padlocker, Inc., 209 F.3d 1319, 1320 (11th Cir. 2000). The PDA additionally mandates that pregnant women "shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability to work or inability to work . . . ." 42 U.S.C. § 2000e(k).

Two types of discrimination are actionable under Title VII: disparate treatment and disparate impact. 196 F.3d at 1312. To recover for disparate treatment, the employee must show that the employer intentionally discriminated against her. Id. The employee can show intentional discrimination either through direct evidence of discrimination or through circumstantial evidence of discrimination. Id. The court notes that the plaintiff in the instant case has not introduced evidence of discriminatory statements so specific and egregious as to constitute direct evidence of intentional gender/pregnancy discrimination. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1081 (11th Cir. 1990). To make out a disparate treatment claim based on circumstantial evidence, the plaintiff must first demonstrate a prima facie case; the employer must then articulate a legitimate, nondiscriminatory reason for the prima facie evidence of discrimination; the plaintiff must, finally, shoulder the burden of proving that the employer's articulated response is actually a pretext for discrimination. 196 F.3d at 1312.

### ARGUMENT

A plaintiff proves a prima facie case of discrimination by showing that: "(1) she is a

6

member of a group protected by Title VII; (2) she was qualified for the position or benefit sought; (3) she suffered an adverse effect on her employment; and (4) she suffered from a differential application of work or disciplinary rules." Id. (citing Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1314 (11th Cir. 1994)). Here, the defendant argues that the plaintiff cannot prove the fourth prong of the prima facie case of gender/pregnancy discrimination because she cannot identify a similarly-situated male or non-pregnant employee who was treated more favorably than she. The defendant also argues that the plaintiff cannot satisfy the second prong of the prima facie case because she cannot show that she was qualified for another available position to which the defendant could have re-hired her. The plaintiff argues that she has identified two management employees whose positions were eliminated and who were offered other positions with the defendant: Steve Garmon, who was demoted to a lower position with a pay reduction; and Jerry Morton, whose management position was eliminated, but who was offered the opportunity to transfer to the computer department.[7] The plaintiff also has identified two employees, Juanita Rodriquez (non-pregnant female) and Lemuel Sanders (male), who were permitted to "take a lay-off" for illnesses or surgery, and who were returned to their former positions with the company when they recovered.[8]

This particular case is unlike other Eleventh Circuit pregnancy discrimination cases in many respects. First, it is undisputed that the employee, who, although apparently qualified for statutorily-guaranteed leave under the FMLA, actually requested that the employer terminate her

---

[7] The court notes that, while the identification of Steve Garmon as a manager who was given a demoted position is supported not only by the plaintiff's allegations but also by Garmon's affidavit and Luchetefeld's admission, the allegation that the defendant offered to transfer Jerry Morton to the computer division is supported only by the plaintiff's assertions and is directly denied by Luchetefeld, Fields, and Hazzard.

[8] The court notes that the plaintiff does not compare herself to employees who, while they were taking their lay-offs, found their positions eliminated as a result of company down-sizing.

employment, for reasons that, according to the plaintiff, "not necessarily" implicated the differences between unpaid FMLA leave and paid unemployment benefits. Second, the evidence shows that after her employment had been terminated, while she was collecting her unemployment benefits from the state, the employee's entire position was eliminated because of widespread, continuous corporate downsizing. Her job functions were split between two already-existing employees, one of whom worked in the Alabama store, one of whom worked within the corporate structure. These already-existing employees continued to perform their job functions in addition to assuming the plaintiff's job functions. The plaintiff's situation, while perhaps analogous to an employee's attempting to return to work from a leave of absence only to find that a new employee has filled her position, is different in that her employment had already been terminated and her very position had been eliminated. No new employees had been hired. In order for the plaintiff to have performed her former job functions, the defendant would have had to terminate Jody Lamey and re-hire the plaintiff.

A pressing issue in this case is with whom should the plaintiff be compared to determine whether similarly-situated employees were treated differently? Should she be compared to non-pregnant/male employees who requested the company to terminate their employment so that they could collect unemployment benefits and who were, later, re-hired to their former positions? Or should she be compared to other non-pregnant/male managers whose positions were eliminated, but who were given the opportunity to transfer to other positions?

In <u>Byrd v. Lakeshore Hospital</u>, 30 F.3d 1380, 1383-1384 (11th Cir. 1994), the Eleventh Circuit held that "it is a violation of the PDA for an employer to deny a pregnant employee the benefits commonly afforded temporarily disabled workers in similar positions, or to discharge a pregnant employee for using those benefits." In the instant case, it could be argued that the

8

ability to request that one's employment be terminated so that one can collect unemployment benefits from the state with the understanding that one will be rehired after those benefits are depleted is a benefit that the defendant commonly affords its temporarily disabled workers. This "benefit" was granted to the plaintiff at her request. However, corporate mechanisms do not halt simply because one statutorily-protected employee has volunteered to be fired, albeit "not necessarily" in order to make an end-run around the guaranteed-but-unpaid leave of the FMLA. The plaintiff's niche in the company was eliminated and her job functions were consolidated with those of two other employees. It is difficult to squarely compare the plaintiff to Gonzales and Sanders because their positions apparently were not eliminated during their period of voluntary exile. Neither party has identified another employee whose position was eliminated after his employment had been terminated at his request.

The plaintiff has provided another category of employee for comparison: the manager who, while he was still employed with the company, lost his managerial position through corporate downsizing. The plaintiff has specifically identified at least one manager, Steve Garmon, who was given a demoted position and a pay-cut. The existence of just one similarly-situated-but-differently-treated non-protected employee was sufficient for the Eleventh Circuit in Garner. In that case, the court found that the defendant had discriminated against a pregnant female manager by failing to either restore her to her former department manager position or place her in a similar position with similar authority after she returned to work from an employer-approved maternity leave. 807 F.3d at 1538. The court compared the plaintiff to a male employee of similar position and authority whose position was held open for him throughout his approved sick leave until he died. Id. The court did not accept the defendant's articulated reason, that there were no similar positions available at the time that the plaintiff

9

wanted to return to work, finding that "[defendant] could have given [plaintiff] a position as a department manager upon her return, or at the very least . . . could have assured [her] of the next opening as a department manager." Id. There is a small but significant difference between the instant case and that of Garner: in Garner, the plaintiff's position still existed. The plaintiff's argument was, in essence, "my position should have been held open." The plaintiff's argument in the instant case is, in essence, "they should have fired her instead of refusing to rehire me."

The defendant additionally argues that Garmon and the plaintiff were not "similarly situated in all relevant respects," see Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997), because Garmon's position was not eliminated in the same way that the managerial positions were eliminated.[9] Instead, the defendant argues, Luchtefeld demoted Garmon for performance reasons, and another employee, Steve Williams, replaced Garmon as manager.[10] Therefore, argues the defendant, its decision to demote Garmon because he was not a good manager is not similar to its decision to eliminate the plaintiff's managerial position. Garmon's former position still existed, while the plaintiff's did not. The defendant points to the evidence that the other two male managers at the Alabama store, Jerry Morton and David Crowe, were not offered alternate positions when their managerial positions actually were eliminated. The defendant further argues that the plaintiff's allegation that Morton was offered an alternate position is based on

---

[9] The defendant also argues, in its Reply to the plaintiff's Opposition to Summary Judgment, that Garmon was a non-management employee. This assertion is contrary to not only Garmon's affidavit, but also to the defendant's own deposition evidence. See Luchtefeld, depo. 122.

[10] The court notes that the plaintiff's own evidence shows that the position of "South Farm Manager" has not been eliminated, and is currently occupied by Steve Williams. See Exhibit 1 to Thompson Affidavit, plaintiff's exhibit 7.

10

inadmissible hearsay.[11]

The second prong of the prima facie case also presents an interesting issue: the plaintiff must show that she was qualified for the position that she sought. In the instant case, the plaintiff's entire position was eliminated.[12] It is undisputed that she was qualified for the position that she held before she asked to be laid off. However, she has not identified another available position with the defendant for which she applied, much less for which she was qualified.

Assuming, for the sake of argument, that the plaintiff is able to prove a prima facie case of pregnancy discrimination, the defendant must proffer a legitimate non-discriminatory reason for its actions. The defendant's articulated reason for not re-hiring the plaintiff is that her position was eliminated through corporate downsizing in an effort to cut costs and maximize profits. The defendant asserts that it chose to not discharge Lamey and re-hire the plaintiff, in large part, because Lamey was paid less money than the plaintiff had been paid while still employed, and would not receive a pay increase along with the additional responsibility. The burden now shifts back to the plaintiff to show that the defendant's articulated reason is a mere pretext for discrimination.

The plaintiff proposes to show that the "corporate downsizing" reason is pretextual through evidence that the company is prosperous, that Fields made sexually explicit remarks

---

[11] The plaintiff claims that Morton told another employee, Sherry Killion, that he had been offered an alternate position, and that Killion, in turn, told the plaintiff. Phillips, depo. 37.

[12] The plaintiff argues that her position was not really eliminated, but was actually given wholesale to Jody Lamey. The plaintiff has presented evidence that Lamey has referred to herself as "personnel manager" on several occasions instead of the job title that the defendant claims to have given her after the consolidation, "personnel coordinator." This foray into semantics is not incredibly persuasive in light of the fact that, whereas before the plaintiff requested her lay-off, there were two employees working in the personnel department of the Alabama store, after the plaintiff's wish to be terminated was granted, that number was reduced to only one.

about women, and that Luchtefeld made what the plaintiff considers to be derogatory remarks about pregnant employees. The plaintiff also points to her own allegations that Luchtefeld advised her that, had she chosen maternity leave under the FMLA instead of the "lay-off," or had she taken no maternity leave at all, she would not have been the first manager to be terminated. Plaintiff's Exhibit 12 p. 2; depo. 175. In the alternative, the plaintiff proposes to show that the "corporate downsizing" reason is a pretext for gender discrimination through the evidence of Fields's sexually explicit remarks, and Luchtefeld's "derogatory" comments. The plaintiff offers additional support for her gender discrimination claim through evidence that Luchtefeld displayed gender bias when he removed the responsibility for nursery security from the plaintiff and gave it to a man because "he felt like a man needed to be over [the] security guards." Philips, depo. 32.

      The defendant argues that, regardless of whether the plaintiff believes that the decision to eliminate administrative positions was financially sound or necessary, she cannot show that it smacks of pregnancy or gender discrimination. It notes that Title VII does not require an employer to have good cause for its employment decisions, as long as those decisions are not based upon a protected characteristic. It characterizes its decision to gradually eliminate certain managerial positions in its ranks as "a business decision that affects a member of a non-protected group in the same way as a member of a protected group," which is "generally not discriminatory." Anderson v. Twinchell-A Tyco International, Ltd., 76 F. Supp. 2d 1279, 1287 (M.D. Ala. 1999)(citing Brown v. American Honda Motor Co., 939 F.2d 946, 952 (11th Cir. 1991)). The defendant contends that the evidence that the plaintiff has proffered is insufficient to support a finding that the defendant really based its decision to not rehire the plaintiff on her pregnancy or her gender, instead of employee downsizing.

## DISCUSSION

Although "ill will, enmity, or hostility are not prerequisites of intentional discrimination," EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1284 (11th Cir. 2000)(quoting Ferrill v. Parker Group, Inc., 168 F.3d 468, 473 n. 7 (11th Cir.1999)), a finding of disparate treatment under Title VII requires a finding "that women were intentionally treated differently by [the defendant] because of or on account of their gender." Id. at 1283. Because Title VII's definition of "sex" or "gender"includes "pregnancy," see Spivey, supra, the plaintiff must also show that she was treated different from other male or non-pregnant employees because of, or on account of, her pregnancy. See also Mitchell v. Jefferson County Bd. of Educ., 936 F.2d 539, 546 (11th Cir. 1991)(plaintiff's Title VII fails for lack of proof that gender was a factor in challenged employment decision).

Further, in order to prove that she was treated differently, the plaintiff must offer proof that there were other employees who were similarly situated and who, under the same or similar circumstances, received more favorable treatment. Some Eleventh Circuit cases have even suggested that the situations must be "nearly identical." See Maniccia v. Brown, 171 F.3d 1364, 1368 (11th Cir. 1999). Even assuming that the "nearly identical" principle is no longer law, see Alexander v. Fulton County, 207 F.3d 1303, 1333 (11th Cir. 2000)(rehearing and rehearing en banc denied May 26, 2000), the plaintiff has not created a reasonable inference of intentional discrimination by comparing herself to a male/non-pregnant employee who asked that his or her job be terminated and who was then re-hired under similar circumstances. The comparators that the plaintiff has proffered are not sufficient because their positions were not completely eliminated as the plaintiff's was. In order for the comparative situations to be sufficiently similar in this case, the defendant must have eliminated the position of a non-protected employee

and must then have offered the displaced employee another position. Because the plaintiff has not supplied enough evidence of the existence of such an employee, this court will not reach the issue of whether that employee must also have been on lay-off status (either voluntarily or otherwise) at the pertinent time. [13]

The court also does not reach the issue of whether, as a matter of public policy, the plaintiff is barred from arguing that any alleged agreement to re-hire her, in spite of the contrived lay-off, is enforceable. The defendant's motion will be Granted.

This 25th day of January, 2001

ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE

---

[13] The court finds that the plaintiff's conclusory allegations regarding employee Jerry Morton are too feeble to support a reasonable inference that he was offered another position.